**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Darweshi DINKANE, Defendant–
Appellant.**

No. 93–50165.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1993.

Decided March 1, 1994.

Patricia L. Reber, Los Angeles, California, for the defendant-appellant.

Robert T. Scott, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: HUG, SCHROEDER, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Darweshi Dinkane appeals his jury conviction of armed bank robbery in violation of 18 U.S.C. § 2113(a)(d) (1988). During his trial, the jury heard evidence that Dinkane helped plan the robbery and that he drove the getaway car. The government, however, presented no evidence from which a jury could conclude that Dinkane knew the robbery was armed prior to the robbers' exit from the bank. The jury was instructed that the government was not required to show that Dinkane actually knew that a dangerous weapon would be used in the robbery to convict him of aiding and abetting the armed bank robbery. We hold that Dinkane's conviction for armed bank robbery must be reversed because the jury instruction was erroneous, and that retrial on this charge is barred because the government failed to present sufficient evidence to support the conviction. Judgment should be entered on the lesser included offense of unarmed bank robbery.

## BACKGROUND

Viewing the evidence in the light most favorable to the government, the facts are as follows: On the afternoon of May 29, 1992, a white Monte Carlo Super Sport and a burgundy-red Stanza drove into a parking lot adjacent to a Security Pacific Bank in Highland Park, California.

Dinkane was in the Stanza. A security guard at the neighboring swap meet saw him get out of the car, walk toward and enter the bank. When he returned, he was carrying some pamphlets. The two drivers and Dinkane spoke in the parking lot for about five minutes before driving away. Broderick Carmichael, who pled guilty to armed bank robbery and testified for the government, stated that it was the responsibility of the person who went into the bank to locate the security cameras so that they could easily be obscured during the robbery.[1]

About fifteen minutes after driving away, the Stanza pulled up in front of the Security Pacific Bank. Three men got out of the car and headed toward the bank. Two went to the back entrance and one went to the front. They had guns, shower caps, a trash bag, and spray paint to cover security camera lenses. As they entered the bank, they pulled out their guns and put on the shower caps. They then entered the bank and announced that they were taking over.

During the robbery, Dinkane remained outside the bank, behind the wheel of the

---

1. Carmichael first stated that he could not recall who went into the bank. The next day, he stated that the scout was another man, not Dinkane.

Stanza. After five to ten minutes, the robbers ran out of the bank with their guns drawn, and returned to the Stanza. One man carried a bag. As they got into the car, bait money in the bag exploded, filling the Stanza with tear gas and red dye. Dinkane, directed by Carmichael, quickly drove away from the bank.

The getaway car was followed by a man who had been watching the car while it was parked in front of the bank. After a short drive, the Stanza stopped in a parking lot, where one robber jumped into a white car and drove off. The other three occupants of the Stanza, including Dinkane, fled on foot. They left two guns near the Stanza, and police later found a can of spray paint and Security Pacific Bank pamphlets inside the abandoned car. Fingerprint analysis revealed Dinkane's fingerprints on the pamphlets.

Dinkane ran up to a car stopped at a traffic light and asked for a ride to Los Angeles. The driver, Deano Campa, noticed Carmichael and another man, Roderick Strong, approaching the other side of his car. The three men were all sweating heavily, and two had removed their shirts. Campa was not threatened by the men and saw no weapons during this encounter with the three men. Campa drove off and sought out the police to report what he had seen. He agreed to help the police search for the robbers.

The three men, Dinkane, Carmichael, and Strong, fled into a nearby park. Shortly thereafter, Campa and the police spotted them hiding in the bushes. All three were arrested. The police found a loaded handgun partly hidden in the leaves near their hiding place.

Dinkane was charged with one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a)(d). The government's theory was that Dinkane, although concededly not in the bank at the time of the robbery, aided and abetted the robbery by driving the getaway car.

At the close of the jury trial, the court gave an instruction to the jury on the required level of knowledge for aiding and abetting armed bank robbery. The instruction, which the government now concedes was incorrect, stated in part: "The government is not required to show that the defendant actually knew that a dangerous weapon would be used."

Dinkane was convicted of armed bank robbery on October 14, 1992. He was sentenced on February 18, 1993 and filed a timely notice of appeal, claiming that his conviction must be reversed (1) because of the erroneous jury instruction; (2) because the evidence was insufficient to support a conviction for either armed or unarmed bank robbery; and (3) because the trial court refused to instruct the jury on the lesser included offense of accessory after the fact. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1988).

## DISCUSSION

### I. *The Erroneous Jury Instruction*

 Dinkane's conviction for armed bank robbery must be reversed because, as the government has conceded, the court, over Dinkane's objection, improperly instructed the jury on the requisite knowledge for conviction as an aider and abettor. In order to convict a defendant for armed bank robbery under an aiding and abetting theory, this circuit requires the government to show beyond a reasonable doubt both that the defendant knew that the principal had and intended to use a dangerous weapon during the robbery, and that the defendant intended to aid in that endeavor. *United States v. Jones,* 592 F.2d 1038, 1042 (9th Cir.), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979); *United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.), *modified,* 500 F.2d 676, *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974). Dinkane's jury was not so instructed; instead the knowledge requirement was virtually eliminated by the proffered instruction. Improper instruction of the jury on this issue constitutes reversible error. *Short,* 493 F.2d at 1172.

### II. *Sufficiency of the Evidence*

Dinkane asserts that he was erroneously convicted of armed bank robbery because the

evidence was insufficient to establish that he knew prior to the robbery that a robbery was planned and that his companions would use weapons. He also argues that the evidence was insufficient to support an unarmed bank robbery conviction, again because he had no knowledge of the robbery before it occurred.

In considering a challenge to the sufficiency of the evidence, this court considers " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bautista–Avila,* 6 F.3d 1360, 1362 (9th Cir.1993) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Circumstantial evidence "can be used to prove any fact," although "mere suspicion or speculation does not rise to the level of sufficient evidence." *United States v. Stauffer,* 922 F.2d 508, 514 (9th Cir.1990) (quotations omitted). "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares,* 940 F.2d 455, 458 (9th Cir.1991) (citing *United States v. Fleishman,* 684 F.2d 1329, 1340 (9th Cir.), *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982)).

### A. *Armed Bank Robbery*

█ Because the erroneous jury instruction requires reversal of the armed bank robbery conviction, our inquiry regarding that charge concerns only whether the evidence supporting the conviction is sufficient to allow the government to retry the armed robbery charge on remand. *See Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978) (defendant cannot be retried when reviewing court has determined that the evidence was insufficient to sustain the jury's verdict). We conclude that the evidence was insufficient to sustain a

conviction and that retrial is therefore prohibited.

█ One who aids and abets a bank robbery can be convicted as a principal. *Short,* 493 F.2d at 1172. To be convicted as an aider and abettor, the defendant must have knowingly and intentionally aided and abetted the principals in each essential element of the crime. *Id.* This assistance must be rendered while the crime is still in progress. *See United States v. Barlow,* 470 F.2d 1245, 1252–53 (D.C.Cir.1972) (if assistance is rendered while the felony is in progress, individual is guilty as a principal; if felony is no longer in progress, then individual can only be guilty as an accessory after the fact).

Armed bank robbery under 18 U.S.C. § 2113(d) is an aggravated form of unarmed bank robbery, under § 2113(a). *United States v. Burnette,* 698 F.2d 1038, 1044 n. 9 (9th Cir.) (citing *United States v. Faleafine,* 492 F.2d 18, 23–25 (9th Cir.1974)), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983). Conviction under § 2113(d) therefore requires that the defendant have committed a violation of § 2113(a) [2], and then, in addition, have committed the aggravating behavior as set forth in § 2113(d). Section 2113(d), in defining armed bank robbery, states that

> [w]hoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, *assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device,* shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

18 U.S.C. § 2113(d) (emphasis added). The aggravating factor defined by § 2113(d) therefore is the assaulting of any person or the putting of a life or lives in jeopardy by the use of a dangerous weapon or device. The aggravating behavior is something that takes place for a discrete period of time; it does not continue once the assaulting of a

---

**2.** Section 2113(a) states in pertinent part:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging

to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association ...

. . . . .

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

person or the placing of a life in jeopardy ends.

Thus, to convict a getaway driver of aiding and abetting an armed bank robbery, the government must first show that the defendant knowingly and intentionally aided and abetted the underlying offense of unarmed bank robbery and then show that the defendant knowingly and intentionally aided the commission of the aggravating element: assaulting a person or putting a life in jeopardy before or during the commission of that aggravating element. If the aiding and abetting of the underlying offense occurs only after the aggravating use of a dangerous weapon has ended, the defendant cannot be shown to have aided and abetted an essential element of armed bank robbery and therefore cannot be convicted of the greater offense.

Our case law supports this interpretation of § 2113(d), requiring the government to show that the defendant knowingly and intentionally aided the commission of the aggravating element. To sustain a § 2113(d) conviction for an aider and abettor in this circuit, the government must "show that the defendant aided and abetted the principal both in the act of bank robbery and in the principal's use of 'a dangerous weapon or device' during the act." *United States v. Jones,* 678 F.2d 102, 105 (9th Cir.1982) (citing *Short,* 493 F.2d at 1172).

Thus, we previously have held that a defendant who aids an escaping armed bank robber by driving a getaway car cannot be convicted of armed bank robbery if the evidence does not show that the defendant ever knew his accomplice used a gun to assault or put in jeopardy the life of any person. *See Jones,* 592 F.2d at 1042. Under such circumstances, the government does not show that the defendant has the requisite knowledge and intent to aid and abet the use of a dangerous weapon to assault a person or to put a life in jeopardy.

We believe that a similar situation is presented when a defendant has no knowledge that his accomplices have dangerous weapons until the weapons are no longer being used to assault or to put lives in jeopardy. Under such circumstances, the government does not show that the defendant knew of and intended to aid the principal's use of a dangerous weapon to assault a person or to place a life in jeopardy before the aggravating behavior ends. We do not reach the issue of whether a defendant who had no knowledge of the use of weapons until the escape could be guilty of aiding and abetting armed bank robbery if weapons were used to assault persons or to put lives in jeopardy during the escape. We simply hold that it is not enough to show that a defendant knowingly and intentionally aided an escape from an armed bank robbery to convict the defendant of aiding and abetting armed bank robbery. There must be some evidence that the alleged aider and abettor knew of and intended to aid the principal's use of a dangerous weapon to assault a person or to put a life in jeopardy before or during that use.[3]

The government contends that it presented sufficient evidence to support Dinkane's conviction for armed bank robbery, even under this standard. We disagree. Viewing the evidence in the light most favorable to the government, Dinkane participated in the planning of the robbery by casing the bank prior to the robbery and consulting in the parking lot; Dinkane's accomplice Carmichael stated that he (Carmichael) was armed when Dinkane joined the group; Dinkane and Carmichael traded seats in the Stanza prior to the robbery; Dinkane waited in the car during the robbery; the three robbers were armed; and Dinkane knew the principals had used guns when he assisted the escape.

No properly instructed jury could reasonably find Dinkane guilty of armed bank robbery on the basis of this evidence. The security guard in the parking lot mentioned no guns when he testified about his observa-

---

**3.** We recognize that in so holding we diverge from the law of the Second Circuit. *See United States v. James,* 998 F.2d 74, 80–82 (2d Cir.) (holding that escape driver with no prior knowledge that robbery would be armed is aider and abettor of armed bank robbery if he knowingly and willfully joins in the escape phase of an armed bank robbery knowing that an accomplice has a gun), *cert. denied,* — U.S. —, 114 S.Ct. 415, 126 L.Ed.2d 362 (1993).

tion of the robbers fifteen minutes before the robbery. There was no testimony that the robbers visibly carried guns until they were entering the bank. Although Carmichael testified that he had a gun when Dinkane joined the group before the robbery, there was no testimony concerning the placement of the gun, for example whether it was visible or hidden under a jacket or shirt, and whether it could have been seen when Dinkane and Carmichael traded seats in the Stanza. Dinkane himself did not have a gun at any time, and no one testified that the use of weapons was ever discussed with Dinkane.

There was thus no evidence that prior to the robbery Dinkane knew that the principals had and intended to use weapons. Furthermore, Dinkane did not participate in the use of the weapons to assault the people in the bank or to put their lives in jeopardy because he was waiting outside the bank, in the car. There was evidence that Dinkane knew the robbers were armed when they exited the bank (the robbers visibly carried guns as they ran out, they left guns by the car, and Carmichael carried a gun as they fled on foot), but there was no evidence that the weapons were used to assault anyone or to put any lives in jeopardy during the escape.

Thus, we hold that the government failed to present sufficient evidence to establish beyond a reasonable doubt that Dinkane in any way aided and abetted the use of weapons to assault any person or to place any lives in jeopardy before or during the time in which the aggravating behavior occurred. The evidence therefore did not establish Dinkane's knowing and intentional participation in an essential element of armed bank robbery and consequently was insufficient to support Dinkane's conviction for armed bank robbery.

### B. Unarmed Bank Robbery

■ The government asserts that even if the evidence was insufficient to convict Dinkane for armed bank robbery, it was sufficient to support a conviction for unarmed bank robbery under § 2113(a). We agree, and accordingly direct the trial court to enter a judgment of conviction for the lesser-included offense of unarmed bank robbery.

■ Dinkane was convicted of the aggravated offense of armed bank robbery. He was not separately charged with or convicted of unarmed bank robbery, and thus there is no judgment entered against him on this count for us to affirm. We may nonetheless direct the trial court to enter a judgment on a lesser offense if the evidence is insufficient to support a guilty verdict on the greater offense but sufficient on the lesser offense when "(1) the lesser offense [is] a lesser-included offense—a 'subset' of the greater one; (2) the jury [was] explicitly instructed that it could find the defendant guilty of the lesser-included offense and [was] properly instructed on the elements of that offense; and (3) the government [requested] on appeal that judgment be entered against the defendant on the lesser offense." *United States v. Vasquez–Chan,* 978 F.2d 546, 554 (9th Cir.1992) (footnotes omitted).

Here, each of these elements is satisfied. Unarmed bank robbery is a lesser-included offense of armed bank robbery, and when the jury found Dinkane had committed the latter, it necessarily also found that he committed the former. *Burnette,* 698 F.2d at 1044 n. 9 (citing *Faleafine,* 492 F.2d at 23–25). The jury was instructed on the elements of unarmed bank robbery and told that it was a lesser-included offense of armed bank robbery, and it was instructed that it could find the defendant guilty of the lesser charge. The jury instructions were not erroneous with respect to this offense. Furthermore, the government on appeal requested that this court affirm Dinkane's "conviction for unarmed bank robbery." This request satisfies the requirement that the government ask for judgment to be entered on the lesser offense on appeal, *see Vasquez–Chan,* 978 F.2d at 554, although the government appears mistakenly to assume that a judgment of conviction was actually entered on the lesser offense.

The evidence was sufficient to support a conviction on this charge. Eighteen U.S.C. § 2113(a) defines unarmed bank robbery, making liable

[w]hoever, by force and violence, or by intimidation, *takes, or attempts to take,* from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association....

18 U.S.C. § 2113(a) (emphasis added).

■ Many courts have found that the crime of unarmed bank robbery continues through the period of hot pursuit. Thus a getaway car driver who learns of the robbery only at the time he aids the escape is guilty as an aider and abettor of bank robbery, not an accessory after the fact. *See, e.g., United States v. Martin,* 749 F.2d 1514, 1518 (11th Cir.1985); *United States v. Willis,* 559 F.2d 443, 444 (5th Cir.1977) (per curiam); *United States v. Jarboe,* 513 F.2d 33, 36–37 (8th Cir.), *cert. denied,* 423 U.S. 849, 96 S.Ct. 90, 46 L.Ed.2d 71 (1975).

This circuit implicitly accepted this proposition in *United States v. Lovato,* 740 F.2d 764, 765–66 (9th Cir.1984). In *Lovato* we upheld jury instructions in a bank robbery trial which stated: "if the evidence proves beyond a reasonable doubt that ... Lovato knowingly, intentionally and willfully aided the robber in leaving the scene of the robbery ... *with stolen money from the [victimized institution],* then defendant Lovato is guilty of the offense of robbery ... *even if you believe she did not know the robbery of the savings and loan was going to take place while she waited in her car." Id.* (emphasis in original). We affirmed Lovato's conviction, suggesting only that the instruction be modified to reflect that the money must have been *just* stolen from the savings and loan. *Id.* at 766.

■ Holding that the crime of unarmed bank robbery continues through the escape comports with the plain language of the statute. Section 2113(a) punishes the *taking* of property belonging to certain financial institutions. The taking continues beyond the immediate scene of the robbery, encompass-

ing the escape.[4] We therefore now make clear what was implicit in *Lovato:* the crime of unarmed bank robbery continues throughout the period of hot pursuit.

Viewing the evidence in the light most favorable to the government, a reasonable jury could have found Dinkane guilty of aiding and abetting unarmed bank robbery. To begin, there was evidence that Dinkane knew of the planned robbery before it even began. The testimony of the security guard identified Dinkane as the individual who went into the bank shortly before the robbery and returned with pamphlets, an accomplice stated that the person who went into the bank had the duty of locating the security cameras as part of the robbery preparations, and Dinkane's fingerprints were on bank pamphlets found in the getaway car. Dinkane also conferred with two of the three men who robbed the bank just minutes before the robbery occurred. The jury, on the basis of this evidence, could have believed beyond a reasonable doubt that Dinkane helped plan the robbery, acting as the scout who went into the bank to locate the security cameras so that they could be blocked during the robbery.

Moreover, even if the evidence of his prior participation was insufficient, the evidence that he knowingly and intentionally aided the escape was sufficient. After the robbery, the three robbers ran out of the bank, guns drawn. One man carried a bag. When they got in the car the exploding bait money filled the car with smoke and red dye. Carmichael, Dinkane's cousin, directed Dinkane to drive to a designated parking lot and he followed the instructions, driving quickly. At this point, a reasonable jury could find that Dinkane knew he was aiding and abetting escaping bank robbers. Furthermore, when they got out of the car, Dinkane, along with the others, fled. The jury might have considered the evidence of Dinkane's flight as indicating his consciousness of guilt. *See United States v. Harris,* 792 F.2d 866, 869 (9th Cir.1986).

---

**4.** We contrast this with the use of a weapon to assault a person or to place a life in jeopardy under § 2113(d). That behavior ends once the weapon is no longer being used in the aggravating manner, it does not continue through the escape.

Although Dinkane argues that he had no knowledge of the robbery and that the jury could not have convicted him based on the testimony of certain witnesses whom it disbelieved with respect to other defendants, the jury was not required to accept Dinkane's potentially innocent explanations for his behavior. *See United States v. Aichele*, 941 F.2d 761, 764 (9th Cir.1991) ("inquiry is whether *any* reasonable jury could find the elements of the crime, on these facts, beyond a reasonable doubt, not whether [the defendant] is plausibly not guilty"). Viewing all of the evidence in the light most favorable to the government, the jury could have believed that Dinkane knowingly and intentionally aided and abetted the robbery of the Security Pacific Bank.

### III. *Accessory After the Fact*

Dinkane claims that the trial court erred when it refused to instruct the jury on the lesser included offense of accessory after the fact to bank robbery. His proposed instruction would have addressed both armed and unarmed bank robbery. Although there is some dispute over the appropriate standard of review when a trial court rejects certain types of proposed jury instructions, *see United States v. Reese*, 2 F.3d 870, 883 (9th Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994), we have consistently reviewed the denial of lesser included offense instructions for abuse of discretion. *See, e.g., United States v. Pedroni*, 958 F.2d 262, 268 (9th Cir.1992); *United States v. Linn*, 880 F.2d 209, 217 (9th Cir. 1989); *United States v. Wagner*, 834 F.2d 1474, 1487 (9th Cir.1987).

"Entitlement to a lesser-included offense instruction turns on completion of a two-step process. 'First, the defendant must identify the lesser-included offense. Second, the defendant must demonstrate that a rational jury could find the defendant guilty of the lesser included offense but not the greater.' " *Linn*, 880 F.2d at 218 (quoting *United States v. Pace*, 833 F.2d 1307, 1314 (9th Cir.1987), *cert. denied*, 486 U.S. 1011, 108 S.Ct. 1742, 100 L.Ed.2d 205 (1988)).

 A lesser included offense instruction is not necessary where the evidence is such that "[a] rational jury could not have convicted [the defendant] of any lesser-included offense without relying on the precise evidence which establishes guilt of the offenses charged." *Linn*, 880 F.2d at 218. Under such circumstances the defendant fails to show that a reasonable jury could find him guilty of a lesser-included offense but not the greater offense.

 Dinkane's arguments rest primarily on his claim that he knew nothing of the robbery prior to the hold up and that his only participation was during the escape phase. He argues that on the basis of this evidence the jury could only have found that he was an accessory after the fact. This argument overlooks the fact that the escape phase is part of the unarmed bank robbery. Because the evidence that would convict Dinkane as an accessory after the fact to unarmed bank robbery, evidence that he drove the getaway car and that he fled with the robbers, also establishes his guilt as an aider and abettor of unarmed bank robbery, the trial court did not abuse its discretion in refusing to give the requested instruction. We need not consider whether the trial court erred by refusing to give this instruction with respect to the armed bank robbery because we reverse Dinkane's conviction on that count.

### CONCLUSION

Dinkane's conviction under 18 U.S.C. § 2113(a)(d) is vacated. The government is barred from retrying him for armed bank robbery. The district court is directed to enter a judgment of conviction for the lesser included offense of unarmed bank robbery. The judgment is REVERSED and the case is REMANDED for proceedings consistent with this opinion.