87 F.3d 1325
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Richard Henderson RHODES III, Defendant-Appellant.
 No. 95-10320.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 17, 1996.*
Decided June 18, 1996.
 
 Before: LEAVY, T.G. NELSON, and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I. OVERVIEW
 
 2
 Richard Henderson Rhodes III appeals his jury conviction on the charges of: I) Armed Bank Robbery/Aiding & Abetting; II) Use of a Firearm in Relation to a Crime of Violence/Aiding & Abetting; and III) Possession of an Illegal Sawed-Off Shotgun/Aiding & Abetting. Rhodes appeals on the grounds that the district court improperly refused to suppress his statements made after he invoked his Miranda rights, the evidence was insufficient to support his convictions, and Count III of the indictment was improperly joined under Fed.R.Crim.P. 8(a). We affirm.
 
 II. FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 On December 27, 1994, between 9:00 and 9:15 a.m., Rhodes's co-defendant Lee Edward Nelson committed an armed robbery of the United States Bank in Reno, Nevada. A witness saw Nelson leave the bank and get into a Ford Mustang driven by Rhodes.
 
 
 4
 A short time later, two plain clothes police officers located the car in route to Sparks, Nevada, and subsequently arrested Rhodes and Nelson. A search of the car revealed the robbery proceeds, substantial ammunition and five weapons, including an illegal sawed-off 12-gauge shotgun.
 
 
 5
 Rhodes was taken to the Reno, Nevada, police station where he was properly advised of, and invoked, his Miranda rights. After recording Rhodes's biographical data, an FBI Agent remarked that it was fortunate that no one had been injured during Rhodes's and Nelson's arrest. Rhodes replied, "I am going to die in prison; I wish they had killed me," and "I do not want to hurt anybody, you guys surprised me. I thought we were clear."
 
 
 6
 On January 11, 1995, Rhodes and Nelson were indicted by a federal grand jury. Rhodes made pre-trial motions to, inter alia, suppress the statements made while he was in custody, and to sever the illegal weapon possession charge from the other counts in the indictment. The district court denied both motions.
 
 
 7
 After a two day trial, the jury returned guilty verdicts on all counts of the indictment. This timely appeal followed.
 
 III. DISCUSSION
 
 8
 A. Rhodes's motion to suppress his custodial statements.
 
 
 9
 We review this mixed question of law and fact de novo. United States v. Moreno-Flores, 33 F.3d 1164, 1168 (9th Cir.1994).
 
 
 10
 Rhodes argues that the Agent's remark to him after he invoked his right to remain silent was the functional equivalent of interrogation within the meaning of Miranda and Rhode Island v. Innis, 446 U.S. 291, 301-03 (1980). This argument lacks merit.
 
 
 11
 "[T]he definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 302, 303. Contrary to Rhodes's contention, the Agent's comment was not particularly evocative nor was it objectively likely to elicit an incriminating response. As such, the comment does not rise to the level of "subtle coercion" that is the functional equivalent of interrogation within the meaning of Miranda and Innis. Thus, the district court properly denied Rhodes's motion to suppress the statements.
 
 
 12
 B. Sufficiency of evidence to support Rhodes's conviction.
 
 
 13
 Because Rhodes failed to move for acquittal at the close of the evidence, we review Rhodes's claim of insufficient evidence for plain error. United States v. Oliver, 60 F.3d 547, 551 (9th Cir.1995); United States v. Quintero-Barraza, 57 F.3d 836, 843 (9th Cir.1995).[1]
 
 
 14
 Rhodes argues that there was insufficient evidence to convict him on Counts I and II of the indictment because the government failed to produce any direct evidence on his knowledge of the robbery prior to or during its commission. Rhodes's contention lacks merit.
 
 
 15
 "In order to convict a defendant for armed bank robbery under an aiding and abetting theory, this circuit requires the government to show beyond a reasonable doubt both that the defendant knew that the principal had and intended to use a dangerous weapon during the robbery, and that the defendant intended to aid in that endeavor." United States v. Dinkane, 17 F.3d 1192, 1195 (9th Cir.1994).
 
 
 16
 Viewed in the light most favorable to the government, the evidence showed that: 1) Rhodes and Nelson were seen together five days before the robbery; 2) Nelson possessed no weapons at that time; 3) five weapons were plainly visible within Rhodes's vehicle, along with ample ammunition for all of them; 4) Rhodes drove Nelson to the bank in a vehicle registered under Rhodes's alias; 5) Nelson carried a gun into the bank and brandished it in an assaultive manner during the robbery; 6) Rhodes waited for Nelson in an alley; 7) Nelson's gun was visible when he ran from the bank; 8) Rhodes sped away from the scene when Nelson re-entered the car; 9) two handguns were found in the driver's seat after Rhodes was arrested; 10) a gun holster was attached to Rhodes's waistband at the time of his arrest; 11) one of the weapons retrieved from the vehicle fit the holster. Compare Dinkane, 17 F.3d 1192, 1198 (finding no evidence that defendant knew the principals had and intended to use weapons, nor that defendant himself had a gun or even saw his co-defendant's gun at any time).
 
 
 17
 Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. See United States v. Lennick, 18 F.3d 814, 820 (9th Cir.), cert. denied, 115 S.Ct. 162 (1994). From this evidence, a reasonable jury could infer that Rhodes either aided Nelson's acquisition of the weapons or, at minimum, was aware of their presence in his vehicle en route to the bank. Thus, we cannot say that the jury clearly erred in reaching its verdicts of conviction on Counts I and II.
 
 
 18
 C. Joinder of Count III of the Indictment.
 
 
 19
 We review claims of misjoinder of offenses under Fed.R.Crim.P. 8(a) de novo. Vasquez-Velasco, 15 F.3d at 843.
 
 
 20
 Rhodes argues that the district court improperly denied his motion to sever the illegal weapon possession charge on the ground that the offense was not of the same character as the offenses charged in Counts I and II.
 
 
 21
 We have previously held that even where misjoinder is found, " 'the court will uphold a ... denial [of severance] if there is strong evidence of guilt and the judge provided careful instructions.' " United States v. Duran, 4 F.3d 800, 804 (9th Cir.1993) (citations omitted).
 
 
 22
 Rhodes relies on this Court's decision in United States v. Terry, 911 F.2d 272, 277 (9th Cir.1990), in support of his assertion that joinder of all three counts of the indictment was improper. The Terry decision, however, is factually distinguishable from the instant case because 13 days transpired between the events charged in the first two counts of Terry's indictment, and those charged in the third. The Terry court concluded that the intervening days suggested that the offenses were not "part of the same transaction or parts of a common scheme" as required by Rule 8(a). Id. at 276.
 
 
 23
 In Rhodes's case, all three of the counts in the indictment arose from events occurring on December 27, 1994. Moreover, the government introduced testimony from a single witness who identified evidence collected from the car once Rhodes and Nelson were arrested. Cf. Terry, 911 F.2d at 276 n. 1 (noting that "none of the witnesses [at Terry's trial] testified as to both counts."). Officer Shipp testified to collecting and cataloguing the sawed-off shotgun referenced in Count III, as well as the proceeds of and weapons utilized in the bank robbery charges of Counts I and II. Thus, the district court did not err by denying Rhodes's motion to sever Count III from the indictment.
 
 
 24
 Further, the district court properly instructed the jury that each crime charged in the indictment must be decided separately, and that their verdict on one count should not control their verdict on any other count.
 
 IV. CONCLUSION
 
 25
 For the forgoing reasons, we affirm Rhodes's convictions on all three counts of the indictment.
 
 
 26
 AFFIRMED.
 
 
 
 *
 Pursuant to Ninth Circuit Rule 34-4, the panel unanimously found this case suitable for disposition without oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 At the close of all the evidence, Rhodes properly renewed his earlier motion to sever Count III of the indictment pursuant to Fed.R.Crim.P. 14. See United States v. Vasquez-Velasco, 15 F.3d 833, 845-46 (9th Cir.1994). However, no motion for acquittal was made prior to jury instructions. Rather than treat the issue as waived, we review to prevent manifest injustice. See, e.g., United States v. Vizcarra-Martinez, 57 F.3d 1506, 1509 (9th Cir.1995) (noting that review is "to prevent a miscarriage of justice" because appellate court should always be reluctant to affirm if the record showed that there was insufficient evidence to sustain the conviction, regardless of the standard of review to be applied)