**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant,*

v.

CHRISTOPHER MICHAEL PIKE,
*Defendant-Appellee.*

No. 05-30528

D.C. No.
CR-04-00340-GMK

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
July 27, 2006—Portland, Oregon

Filed January 17, 2007

Before: Stephen Reinhardt, A. Wallace Tashima, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Reinhardt

## COUNSEL

Karin J. Immergut, United States Attorney, District of Oregon, Portland, Oregon; and Gary Y. Sussman, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellant.

Nancy Bergeson, Assistant Federal Public Defender, Portland, Oregon, for the defendant-appellee.

## OPINION

REINHARDT, Circuit Judge:

The government appeals the fifty-month sentence imposed by the district court following Christopher Pike's plea of

guilty to bank robbery under 18 U.S.C. § 2113(a). It argues that the district judge applied an incorrect standard of proof in considering whether to impose a five-level enhancement for possession of a firearm and that, under the correct standard, the enhancement was warranted. It further contends that the district court, having decided not to impose the five-level enhancement, clearly erred in declining to impose a two-level enhancement for making a threat of death. With respect to the five-level enhancement, we agree that the district court applied an incorrect standard of proof. We remand so that it may apply the correct standard and determine, under that standard, whether Pike possessed a firearm during the robbery. We note, however, that we remand only because the district court erred in its method of calculating what the appropriate advisory Guidelines range would be. We do not intimate that it should impose a sentence within whatever advisory range it properly calculates on remand. With respect to the two-level enhancement, we remand for reconsideration, if necessary, in light of our decision in *United States v. Jennings*, 439 F.3d 604 (9th Cir. 2006).

I

On July 15, 2004, Christopher Pike rode his bicycle to the Wells Fargo Hayden Island Branch in Portland, Oregon, and robbed it. He gave a bank teller a handwritten note that stated, "Give me all the money. I have a gun. No bullshit." Pike then held open a backpack into which the teller placed cash and, unbeknownst to Pike, bait bills and an electronic tracking device. The bank manager, who was standing between five and ten feet from the teller, testified at Pike's sentencing hearing that he did not see a gun in Pike's backpack. After receiving a total of $4,495, Pike zipped up the backpack, retrieved the demand note, and left the bank. He fled on the bicycle to his car, which, according to an investigating officer, "he had parked . . . a ways away at an apartment complex on the far east end of Jantzen Beach." As far as the record reveals, Pike was not followed while riding his bicycle. He then drove his

car to the Rivermark Credit Union, where he deposited $1,050 into his landlord's bank account to pay his rent.

Shortly after Pike fled, the police began to monitor the signal transmitted by the electronic tracking device in his backpack. Approximately thirty minutes after the robbery, Portland police stopped Pike's vehicle and placed him under arrest. By then, he already had made his rent payment. While Pike was detained in the police car, he made the following unsolicited statement: "I have a 10-month old at home and we couldn't make the rent. This was it." The police searched Pike's vehicle and found the backpack, which contained $3,435 in cash, the bait bills, the electronic tracking device, and an unloaded gun. Officers also found in the vehicle a sweatshirt matching witnesses' description of the shirt Pike wore during the robbery, and a torn-up demand note that read, "Got a Gun Gimme all Moneys No Funny Shit Got Police Radio."

Following his arrest, Pike waived his right to an attorney and was interviewed by a Portland Police Detective. Pike took responsibility for the robbery and claimed that his actions stemmed from his inability to obtain a job or pay rent. He stated that he had a young child at home for whom he was caring because his wife had a severe case of postpartum depression and was unable to do so. He also told the detective that he did not intend to hurt anybody. When asked about the torn demand note found in the car, Pike claimed that he wrote the note a week earlier, but decided against committing the robbery at that time and ripped it up. Pike said that he had discarded the demand note that he actually used during the robbery. In addition, he told the officer that he left the gun in the car when he rode his bicycle to the bank to commit the robbery.

On May 9, 2005, Pike pled guilty, without the benefit of a plea agreement, to one count of bank robbery under 18 U.S.C.

§ 2113(a).[1] The Probation Office issued a pre-sentence report recommending a base level offense of twenty, a two-level enhancement under U.S.S.G. § 2B3.1(b)(1) for taking the property of a financial institution, and a five-level enhancement under § 2B3.1(b)(2)(C) for possessing a firearm during the bank robbery. The report also recommended a three-level reduction for acceptance of responsibility, resulting in a total offense level of twenty-four. Pike's criminal history points placed him in Category V. The resulting Sentencing Guidelines range was 92 to 115 months.

At the September 20, 2005, sentencing hearing, Pike challenged the five-level increase for firearm possession, arguing that there was insufficient evidence that he had the gun while in the bank. The government contended that, even if Pike did not posses the firearm while in the bank, as it believed he did, the evidence that the gun was in the car before and after the robbery was sufficient to trigger the five-level enhancement. The district judge identified two issues relevant to the five-level increase: (1) whether Pike had a gun in his backpack during the robbery, and (2) "whether or not finding the gun in the backpack at the time of his arrest is sufficient under the possession enhancement." With respect to the first issue and the appropriate standard of proof, the judge found in pertinent part as follows:

> On the five-level enhancement, the burden is at least clear and convincing on the part of the Government,

---

[1]Section 2113(a) states in relevant part as follows:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . . Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 2113(a).

since it is a five-level enhancement, and I find that the Government has not proved by clear and convincing evidence that the defendant had the gun while he was in the bank. His testimony was that he left it in the car. This occurred at a time when he's — immediately after his arrest. Such statements are sometimes more credible than others. But also the fact that the backpack was opened to put the money in, and there was no indication that the teller saw a gun or that anyone saw a gun. Given the clear and convincing requirement and the fact that it's a five-level enhancement, I find that there is not clear and convincing evidence that he had the gun while he was in the bank.

The judge also rejected the government's argument that the discovery of the gun in Pike's car approximately thirty minutes after the robbery was sufficient to warrant the enhancement.

The government sought, in the alternative to the five-level enhancement, a two-level enhancement under U.S.S.G. § 2B3.1(b)(2)(F) based upon Pike's purported "threat of death" in the demand note. Although the government acknowledged that at the time of sentencing there was no Ninth Circuit authority holding that a written "I have a gun" statement or a verbal statement to the same effect was sufficient standing alone to warrant the two-level enhancement, it noted that several other circuits had so held. The district judge declined to impose the two-level enhancement:

And the question is, as a matter of law, whether the "I have a gun" is sufficient to apply the two-level enhancement. . . . What do we do? [District Judge] Aiken has said it doesn't apply, and that two-level enhancement wasn't applied to that defendant. In discussing this with other judges at our sentencing conference, I think the judges go both ways on this.

> I am reluctant to apply the two-level enhancement for threat of death because I do not want to enunciate a rule of law that I'm not certain should apply. And given the uncertain state of law on this and Judge Aiken's opinion, I'm not going to apply that as well.

Absent both contested enhancements,[2] Pike's offense level was nineteen, resulting in a Guidelines range of fifty-seven to seventy-one months. The district judge sentenced Pike to fifty months, finding that to be a "just and reasonable sentence," and a three-year term of supervised release. The judge sentenced Pike to less than the applicable Guidelines range as a result of Pike's "attempts at employment, at taking care of [his] family," and his "potential for turnaround." The government appealed.

## II

### A.   Five-Level Enhancement

We must address two principal issues with respect to the five-level enhancement for possessing a firearm during the bank robbery: first, whether the district judge applied the correct standard of proof, and second whether, under the correct standard of proof, there was sufficient evidence to warrant the enhancement. The second issue requires a determination of, *inter alia*, the point at which Pike's robbery of the Wells Fargo branch office ended, and whether he possessed the gun for purposes of the enhancement prior to that time.

### *Standard of Proof*

**[1]** The ordinary standard of proof for factual findings underlying sentencing enhancements is preponderance of the evidence. *See United States v. Riley*, 335 F.3d 919, 925 (9th

---

[2]Pike did not contest the two-level enhancement for taking the property of a financial institution.

Cir. 2003). We have held, however, that there are certain circumstances in which a clear and convincing standard is appropriate, such as where the enhancement would have " 'an extremely disproportionate effect' " on the sentence. *United States v. Hopper*, 177 F.3d 824, 832-33 (9th Cir. 1999) (quoting *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir. 1991) (en banc)); *see also Riley*, 335 F.3d at 925; *United States v. Jordan*, 256 F.3d 922, 927 (9th Cir. 2001). There is no "bright-line" rule in the Ninth Circuit governing the application of the extremely disproportionate effect test; rather, courts look to the totality of the circumstances in determining whether the test is met. *See Jordan*, 256 F.3d at 928. We have identified six factors that should be considered: (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the burden of proof for the alleged crime; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based upon the extent of conspiracy; (5) whether the increase in number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial Guidelines range "in a case where the defendant would otherwise have received a relatively short sentence." *Id.* (internal quotation marks and citation omitted).

**[2]** Here, the district court failed to consider the totality of the circumstances in holding the government to a clear and convincing standard of proof. Rather, it concluded that a heightened burden was warranted merely because possession of a gun requires a five-level enhancement under § 2B3.1(b)(2)(C): "On the five-level enhancement, the burden is at least clear and convincing on the part of the Government, since it is a five-level enhancement . . . ." In deeming the fact of a five-level enhancement, standing alone, to be controlling, and in failing to consider the totality of the circumstances, the district court erred. *See id.* (holding that, in determining whether

to apply a heightened standard at sentencing, "we have looked at the 'totality of the circumstances,' without considering any one factor as dispositive").

The next question is whether the district court's error was harmless. In other words, under the totality of the circumstances, did the five-level enhancement have an extremely disproportionate effect on Pike's sentence? We conclude that it did not.

**[3]** The parties agree that only two of the *Valensia* factors may be relevant: (1) whether the increase in offense level is less than or equal to four, and (2) whether the length of the enhanced sentence is more than double the length of the sentence recommended by the initial Guidelines range. With respect to the first issue, it is clear that a five-level increase is greater than a four-level increase. The question is whether the second factor applies. Absent the five-level enhancement, Pike's sentencing range is fifty-seven to seventy-one months. A five-level enhancement would result, however, in a sentencing range of 92 to 115 months. Pike argues that the second *Valensia* factor is met because the high point of the enhanced range is more than double the low point of the non-enhanced range. Although that may be true, the comparison urged by Pike is incomplete. Critically, in cases in which we have considered whether a sentence would be doubled due to a contested enhancement, we have compared both the respective high and low points of the relevant Guidelines ranges. *See, e.g., Riley*, 335 F.3d at 927 (holding that a range of forty-one to fifty-one months was *not* more than double a range of twenty-four to thirty months); *Jordan*, 256 F.3d at 929; *United States v. Mezas de Jesus*, 217 F.3d 638, 643 (9th Cir. 2000). Here, a comparison of the low and high points of the two Guidelines ranges — fifty-seven to seventy-one months, and 92 to 115 months — reveals that the enhanced range is *not* more than double the non-enhanced range.

**[4]** Accordingly, the only *Valensia* factor that favors Pike is the one considered by the district court — the enhancement

resulted in an increase of more than four in his offense level. As the government argues, we have never in any opinion required a heightened standard of proof solely upon the basis of an enhancement of more than four levels. *See*, *e.g.*, *United States v. Munoz*, 233 F.3d 1117, 1126-27 (9th Cir. 2000) (ruling that a nine-level enhancement that more than doubled the applicable Guidelines range warranted a heightened standard); *Hopper*, 177 F.3d at 833 (holding that a seven-level enhancement that resulted in more than doubling the Guidelines range had an extremely disproportionate effect); *but see Riley*, 335 F.3d at 927 (four-level enhancement did *not* trigger clear and convincing standard where Guidelines range did not double). Nor, after considering the length of the Guidelines ranges, both independently and comparatively, as well as the other relevant circumstances, do we believe that this is an appropriate case in which to do so. Rather, we conclude that, under the totality of the circumstances, the five-level enhancement under § 2B3.1(b)(2)(C) did not warrant a heightened standard of proof at sentencing in this case. The enhancement would not have an extremely disproportionate effect on Pike's sentence and, thus, the district court erred in holding the government to a clear and convincing burden.

*Possession of a Firearm*

[5] Because we hold that the district court applied an incorrect standard of proof with respect to the five-level enhancement, we remand for reconsideration the question whether the government met its burden on that issue. On remand, the district court shall first determine whether the government showed, by a preponderance of the evidence, that Pike possessed the firearm while he was in the bank committing the robbery. If the district court concludes that he did, the five-level enhancement is warranted. If the court finds that he did not, but that he left the firearm in the car parked "a ways away" from the bank, it may not impose the five-level enhancement because, in that case, Pike did not possess the

gun during the robbery, including any attendant "escape," as we are compelled to construe that term.

**[6]** Our decision in *United States v. Dinkane*, 17 F.3d 1192, 1199 (9th Cir. 1994), is relevant. In *Dinkane*, we held that

> Section 2113(a) punishes the *taking* of property belonging to certain financial institutions. The taking continues beyond the immediate scene of the robbery, encompassing the escape. . . . [T]he crime of unarmed bank robbery continues throughout the period of hot pursuit.

*Id.* (emphasis in original). In doing so, we considered whether the getaway car driver, who did not participate directly in the robbery of a bank, was guilty under § 2113(a). The facts established that

> Dinkane, directed by [his cousin], quickly drove from the bank. The getaway car was followed by a man who had been watching the car while it was parked in front of the bank.

*Id.* at 1195. In *Dinkane*, we construed the terms "escape" and "hot pursuit" as being coterminous — we used them interchangeably, and concluded that the jury could have reasonably found Dinkane guilty of robbery *at the point* he fled the bank's parking lot followed by a bystander's car. *Id.* Several other circuits agree that "escape," as synonymous with "hot pursuit," is part and parcel of a bank robbery under § 2113(a). *See*, *e.g.*, *United States v. Williams*, 344 F.3d 365, 372 (3d Cir. 2003) (holding that assaults occurring in hot pursuit fell "within the scope of the federal Bank Robbery Act"); *United States v. Mills*, 1 F.3d 414, 419-20 (6th Cir. 1993) ("Courts applying the bank robbery statute have concluded that the reference in 18 U.S.C. § 2113(d) to assaults in committing the offense of bank robbery includes injuries caused during hot pursuit from a bank robbery."); *United States v. Pietras*, 501

F.2d 182, 187 (8th Cir. 1974) (holding that, under § 2113(a), robbery extends "to a hot pursuit that follows the physical departure from the bank building").

*Dinkane* remains our last word on the question. Our definition of the term "escape" is consistent not only with the precedent cited above, but also with the Supreme Court's holding in *Carter v. United States*, 530 U.S. 255 (2000). In *Carter*, the Court considered whether the offense described in 18 U.S.C. § 2113(b) — "Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000" from a financial institution — is a lesser included offense of ordinary bank robbery under § 2113(a). *Id.* at 260. The Court concluded that it was not, in part because § 2113(b) requires a taking *and carrying away* of something of value, whereas § 2113(a) requires only a taking. *Id.* (emphasis added); *see also Williams*, 344 F.3d at 373 (holding that, under *Carter*, "the strict elements of a federal bank robbery offense under 18 U.S.C. § 2113(a) do not include 'taking away' "). Thus, we are not persuaded by the Eleventh Circuit's opinion in *United States v. Martin*, 749 F.2d 1514, 1518 (11th Cir. 1985), decided before *Carter*, which held that escape does not necessarily conclude when hot pursuit ends because "asportation is an element" of the offense under § 2113(a). After *Carter*, that justification for extending the scope of escape is no longer valid.

In addition, our definition of "escape" as coextensive with "hot pursuit" comports with our case law generally addressing U.S.S.G. § 2B3.1(b)(2)(C). For example, in *United States v. Taylor*, 960 F.2d 115, 116-17 (9th Cir. 1992), we held that an enhancement under § 2B3.1(b)(2)(C) was warranted where the defendant showed an outline of a gun underneath a t-shirt, although the record did not reveal whether he actually possessed a gun. We concluded that the fact that the defendant intentionally created the appearance he had a gun was sufficient, because it (1) created greater apprehension in his victims, and (2) increased the likelihood that the police or

bystanders would react using deadly force. *Taylor*, 960 F.2d at 116-17; *see also United States v. Boyd*, 924 F.2d 945, 947 (9th Cir. 1991) (holding that the same two justifications warranted a § 2B3.1(b)(2)(C) enhancement). Similarly, in the context of hot pursuit, the two rationales for the enhancement would apply because a firearm could create greater apprehension in the pursuers, who also would be more likely to use deadly force than if the would-be escapee did not possess a dangerous weapon. Neither reason, however, would support applying the enhancement during flight, more broadly defined, where there was neither pursuit nor pursuers. In such a case, there would be nobody in whom to instill apprehension, or from whom to increase the likelihood of a violent response.

**[7]** For the foregoing reasons, we reaffirm our holding in *Dinkane* that the period of escape under § 2113(a) encompasses only hot pursuit. Here, there is no evidence in the record of hot pursuit; indeed, it is evident from the record that Pike was not followed by anyone while he was riding the bicycle to his vehicle. The facts show that either Pike had the gun with him in the backpack that he carried into the bank *or* the gun remained in the car during the actual robbery. In the latter case, an enhancement would be improper because the flight from the bank clearly ended when the defendant completed his bicycle trip from the crime scene to the car, which he then drove to the credit union in order to make a deposit to his landlord's account. Driving the car to the credit union could not, under the circumstances, constitute a part of the flight. Accordingly, if on remand the district court finds that the government has not met its burden of showing, by a preponderance of the evidence, that Pike possessed a gun while in the bank, it may not impose the five-level enhancement under § 2B3.1(b)(2)(C).

## B.   Two-Level Enhancement

The government further contends that the district court committed clear error in declining to apply, under § 2B3.1(b)(2)(F), a two-level enhancement for making a "threat of death."**³** With respect to this issue, the district judge considered the following question: "[A]s a matter of law, whether the 'I have a gun' is sufficient to apply the two-level enhancement." The judge concluded that, based on the status of the law in our circuit at the time, it was not.

[8] A threat of death includes an "oral or written statement, act, gesture, or combination thereof," where a defendant engages in conduct that would instill the fear of death in a reasonable person who is a victim of the offense. U.S.S.G. § 2B3.1, cmt. n6. In *United States v. Jennings*, 439 F.3d 604, 611 (9th Cir. 2006), issued after Pike's sentencing, we ruled that "in most, but not all, circumstances, statements such as 'I have a gun' *are* sufficient to instill a fear of death in a reasonable victim and warrant the § 2B3.1(b)(2)(F) enhancement." (Emphasis added.) We declined to adopt a *per se* rule, however: Such statements "will not *always* amount to a threat of death" because it is possible that, under the totality of circumstances, "mitigating circumstances accompanying [the] statement could deprive the words of their ordinary and expected meaning." *Id.* (emphasis in original).

[9] In view of *Jennings*, the district court's finding that a note such as Pike handed the bank teller is not, as a matter of law, sufficient to warrant the two-level enhancement was erroneous. Thus, we remand the issue to the district court so that it may consider whether, under the totality of circumstances, Pike's actions in this case deprived the words in the

---

**³**We note that the government sought the two-level enhancement as an alternative to the five-level enhancement. Accordingly, if the district court determines on remand that the five-level enhancement is warranted, it need not reach the issue of the two-level enhancement.

note of their ordinary meaning. If they did not, the two-level enhancement for making a threat of death would be applicable.

## III

We conclude that, under the totality of the circumstances, the district court erred in requiring the government to meet a clear and convincing standard with respect to the five-level enhancement for possessing a firearm during the bank robbery. We remand for reconsideration whether, under a preponderance of the evidence standard, the government showed that Pike possessed a firearm during the robbery. Because, under *Dinkane*, robbery under 18 U.S.C. § 2113(a) continues only through the period of "hot pursuit," the five-level enhancement is appropriate only if the government shows that Pike had the gun while actually in the bank. If the district court finds that the five-level enhancement is not warranted, it shall reconsider, in light of *Jennings*, whether to impose the two-level enhancement for making a threat of death.

**REMANDED**.