UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark Wesley JOHNSON, Defendant–Appellant.

No. 98–30297.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1999.

Decided Aug. 16, 1999..

Mark Bennett Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for the defendant-appellant.

William E. Fitzgerald, Assistant United States Attorney, Eugene, Oregon, for the plaintiff-appellee.

Before: FLETCHER, FERGUSON, and TASHIMA, Circuit Judges.

Opinion by Judge FERGUSON; Partial Concurrence and Partial Dissent by Judge TASHIMA.

FERGUSON, Circuit Judge:

Mark Johnson was sentenced to a term of 71 months pursuant to a guilty plea for possession of a firearm by a prohibited person in violation of · 18 U.S.C. § 922(g)(9). On appeal, we vacate his sentence and remand for re-sentencing before a different district court judge.

## I. BACKGROUND

On March 20, 1997, Kelly Johnson, Mark Johnson's wife, came home from work and parked her car in the driveway of the couple's apartment complex. Because her husband had called her earlier in the day accusing her of having an affair, Kelly sat in her car afraid to go inside. Seeing Kelly in her car, Mark came out of the apartment and started yelling at her. When Kelly tried to drive away, Mark snatched the keys from the ignition. He then reached inside the car, grabbed Kelly by the face, and shook her head violently. Kelly was able to jump out of the car and run to a neighbor's apartment. There, she called 911 and told the operator that her husband was going to kill her.

Agitated and partially drunk, Mark went back to the couple's apartment. There, he retrieved the Norinco SKS machine gun he had stored in his apartment and went outside. Once outside, he fired a "burst of bullets" into the ground beside the apartment building.

When the police arrived on the scene, they found Mark wandering through the parking lot. Kelly spoke with the officers and gave them permission to search the apartment. The officers found the machine gun and additional ammunition in the apartment. After being advised of his constitutional rights, Mark admitted that the gun was his, that he had paid someone to modify it for him to fire in fully auto-matic mode, and that he had fired the gun outside the complex.

On February 18, 1998, a District of Oregon grand jury returned an indictment charging Johnson with unlawful possession of a firearm following a misdemeanor domestic violence conviction[1] in violation of 18 U.S.C. § 922(g)(9) and with unlawful possession of a machine gun in violation of 18 U.S.C. § 922(o)(1). On August 3, 1998, Johnson pleaded guilty to the first count pursuant to a plea agreement with the government; in return, the government promised to recommend the low end of the applicable sentencing range and to drop the second count of the indictment.

Johnson appeared before the district court on October 15, 1998, for his sentencing hearing. At the hearing, the government asked for two sentencing enhancements, as set forth in the plea agreement. First, the government asked for a four-level enhancement based on U.S.S.G. § 2K2.1(b)(5) because Johnson used the firearm in connection with "another felony offense." Johnson claimed that his conduct did not fall within that section, but the district court agreed with the government, finding that Johnson used the firearm in connection with the Oregon offense of unlawful use of a weapon. Second, the government asked for a two level enhancement based on U.S.S.G. § 3A1.3 because a victim was physically restrained "in the course of the offense." Johnson objected to this enhancement as well, but the district court found that Johnson had restrained Kelly four days earlier when he held her hostage in the apartment without allowing her to leave and also on the day of the gun incident when he took her car keys.

The district court's findings resulted in a net offense level of 21, corresponding to a sentence range of 57 to 71 months. Although the presentence report filed by the probation office recommended sentencing at the top of the range (71 months), the government agreed in its plea agreement

1. In 1994, Johnson had been convicted of a Montana misdemeanor domestic violence of-fense as a result of punching and kicking his then-common law spouse, Julie McDonald.

to recommend Johnson be sentenced at the low end of the sentencing range. The district court agreed with the probation officer and sentenced Johnson to 71 months incarceration. Johnson is currently serving that sentence.

## II. DISCUSSION

A. *U.S.S.G. § 2K2.1(b)(5): Another Felony Offense Enhancement*

■■■ Under U.S.S.G. § 2K2.1(b)(5), the district court applied a four-level enhancement for committing "another felony offense" based on its finding that Johnson had committed the Oregon felony of unlawful use of a weapon. We review the district court's application of the Sentencing Guidelines to the facts of a particular case for an abuse of discretion, *United States v. Aguilar-Ayala*, 120 F.3d 176, 177–78 (9th Cir.1997), and hold that the district court abused its discretion in concluding that Johnson had committed the Oregon offense of unlawful use of a weapon.

U.S.S.G. § 2K2.1(b)(5) provides as follows: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." U.S.S.G. § 2K2.1(b)(5). Application note 7 states that " 'felony offense' . . . means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." Application note 18 states that " 'another felony offense' . . . refer[s] to offenses other than explosives or firearms possession or trafficking offenses."

The district court here found that Johnson used the weapon in connection with the Oregon felony of unlawful use of a weapon, Or.Rev.Stat. § 166.220(1), which states in full:

A person commits the crime of unlawful use of a weapon if the person: (a) At-

tempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015; or (b) Intentionally discharges a firearm, blowgun, bow and arrow, crossbow, or explosive device within the city limits of any city or within residential areas within urban growth boundaries at or in the direction of any person, building, structure, or vehicle within the range of the weapon without having legal authority for such discharge.

The court did not specify upon which subsection of § 166.220(1) it based the enhancement.

Regardless of which subsection of § 166.220(1) the district court based the enhancement, the court abused its discretion in finding that Johnson's conduct fell within the terms of the statute. To have violated subsection (a) of § 166.220(1), Johnson must have attempted to use his firearm "against another" or have had the intent to use his weapon against another.[2] However, it is undisputed here that Johnson fired his gun into the ground and did not attempt to use his weapon against another person. In fact, none of the evidence presented to the district court showed even an intent to use the weapon against another person. The government recognized that much in its brief in this appeal, in which it argued only that Johnson violated subsection (b) of § 166.220(1).

That argument, though, is incorrect. Although the record supports a conclusion that Johnson intentionally fired his weapon, as subsection (b) requires, Johnson did not fall within a different part of subsection (b). The statute requires that the weapon be fired "at or in the direction of any person, building, structure or vehicle within the range of the weapon." Inexplicably, the district court omitted that part of the statute in its analysis.[3]

---

**2.** Moreover, the subsection (a) offense of possession "with intent to use unlawfully against another" is probably excepted from the § 2K2.1(b)(5) enhancement because it is a

"possession" offense. *See* U.S.S.G. § 2K2.1 application note 18.

**3.** The government used ellipses to leave this decisive part of the statute out of its brief.

Nevertheless, it is clear that Johnson did not fire his weapon "in the direction of any person, building, structure or vehicle"—as required by § 166.220(1)(b). *See Oregon v. Wimberly,* 152 Or.App. 154, 952 P.2d 1042, 1044 (1998) (noting that the Oregon district attorney acknowledges that firing the weapon "at or in the direction of a person, building, structure, or vehicle" is a separate element of § 166.220(1)(b)). All Johnson did in this case was fire his weapon into the ground. According to the presentence report, a child was nearby, but there was absolutely no allegation that Johnson fired his weapon "at or in the direction" of the child. At oral argument, the government admitted as much, stating that there was no evidence that Johnson fired his weapon at a person or building.

Because Johnson did not use his weapon against another person or have the intent to use it against another person, and he did not fire his weapon toward a person, building, structure, or vehicle, Johnson plainly did not commit a felony under § 166.220(1)—subsection (a) or (b). In concluding that Johnson did unlawfully use the weapon under § 166.220(1), the district court abused its discretion by granting the four-level enhancement under U.S.S.G. § 2K2.1(b)(5) for using a weapon in connection with another felony offense.

### B. *U.S.S.G. § 3A1.3: Restraint of Victim Enhancement*

■ Along with the four-level enhancement discussed above, the district court interpreted U.S.S.G. § 3A1.3 to apply to Johnson and granted the government's request for a two-level enhancement. We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Bailey,* 139 F.3d 667, 667 (9th Cir.1998). Under that standard, we conclude that the district court properly granted the government's application for a two-level enhancement based on restraint of victim.

U.S.S.G. § 3A1.3 provides for a two level enhancement "[i]f a victim was physically restrained in the course of the offense." Johnson admitted in his reply brief that he restrained Kelly on March 20 when he held her in her car when she returned home from work. *See* Reply Br. at 10 ("The March 20 incident in the parking lot of Mr. Johnson's apartment building *involved the brief restraint* of Kelly Johnson while she was seated in her own car.") (emphasis added). In addition, Johnson testified at the sentencing hearing that he restrained Kelly: "I got to grab the keys out of her car so she doesn't leave...." However, he claims that his conduct was not "in the course of the offense" of possession of a firearm by a prohibited person. That phrase—"in the course of the offense"—is not defined in the Sentencing Guidelines or in Ninth Circuit case law.

■ Only the Sixth Circuit has looked at this specific part of § 3A1.3. In *United States v. Cross,* 121 F.3d 234 (6th Cir. 1997), the court held that whether an act of restraint occurred "in the course of the offense" under § 3A1.3 should be analyzed by looking to whether the act of restraint could be considered "relevant conduct" under U.S.S.G. § 1B1.3. *Id.* at 238–39. We now follow the Sixth Circuit's lead on this issue and look to § 1B1.3 to determine if the acts of physical restraint here are "relevant conduct" and thus took place "in the course of the offense." Section 1B1.3 of the Sentencing Guidelines provides as follows:

Unless otherwise specified ... (iv) adjustments in Chapter Three, shall be determined on the basis of the following: (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... *that occurred during the commission of the offense of convic-*

Such use of ellipses to omit a relevant section of the Oregon statute is improper. Use of ellipses to excise relevant and decisive sec-

tions of the statute in a way that benefits the government's case is looked upon with great disfavor.

*tion, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.*

U.S.S.G. § 1B1.3(a)(1)(A) (emphasis added).[4]

Whether either of the two incidents of physical restraint falls within § 1B1.3(a)(1)(A) is the critical inquiry here. Of the three temporal options within the last part of the guideline—occurring during the offense, in preparation for the offense, or in the course of evading responsibility or detection—only the first has relevance to this case. Thus, if Johnson restrained Kelly while he engaged in the offense of possession on March 20, the enhancement was proper.

Resolution of this matter requires an understanding of *when* possession occurs. Previously, this Court has defined "possession" as follows: "The element of possession may be satisfied by proof of constructive or joint possession. To establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself *or the premises* or vehicle in which contraband is concealed." *United States v. Shirley,* 884 F.2d 1130, 1134 (9th Cir.1989) (internal citations and quotations omitted) (emphasis added). It is undeniable that when Johnson restrained Kelly at her car on March 20 he had dominion over his apartment where the gun was stored. Because the legal definition of possession includes having dominion over the premises in which the contraband is concealed, Johnson possessed the weapon while restraining Kelly at her car. The district court thus properly applied the two-level enhancement for restraint of victim to this case.

### C. *Breach of Plea Agreement*

■ The district court sentenced Johnson to the high end of the applicable sentencing range. Johnson claims that the sentence resulted from a breach of the prosecutor's end of the plea agreement. The Ninth Circuit has been inconsistent in its standards for reviewing a claim that the government has breached a plea agreement. *Compare United States v. Schuman,* 127 F.3d 815, 817 (9th Cir.1997) (de novo standard), *with United States v. Salemo,* 81 F.3d 1453, 1460 (9th Cir.1996) (clearly erroneous standard). Although those conflicting standards may bring about different results in some cases, we conclude that under either standard the government has breached the plea agreement in this case in its use of a victim impact statement to influence the judge to deviate from the low end of the applicable sentencing range.

■ Johnson claims the government breached the plea agreement in three different ways. Two of those claims are unconvincing. Johnson first claims that, by arguing to the district court that Johnson used his weapon in connection with the Oregon crimes of kidnaping and coercion, the government recommended a basis for the four-level enhancement that differed from the basis included in the plea agreement. Plea agreements are contracts, and the government is held to the literal terms of the agreement. *United States v. Baker,* 25 F.3d 1452, 1458 (9th Cir.1994). The plea agreement here states that the government would recommend a four-level enhancement for possession of a firearm in connection with another "felony offense, to wit: unlawful use of a weapon, in violation of Oregon Revised Statutes, § 166.220 .... The Government promises not to recommend any other enhancements or departures." The government held to that promise by recommending only the four-level "other felony offense" enhancement and the two-level "restraint of victim" enhancement. Although it recommended

4. The other sections of § 1B1.3 do not apply to this case: § 1B1.3(a)(1)(B) applies to "jointly undertaken criminal activity"; § 1B1.3(a)(2) applies to offenses for which the Guidelines provide for "grouping of multiple counts"; and § 1B1.3(a)(3) applies to all "harm" from the acts of the defendant specified in § 1B1.3(a)(1) and § 1B1.3(a)(2).

two alternative *bases* for the four-level enhancement, it did not recommend a different *enhancement*. In doing so, it complied with the literal terms of the agreement.

Johnson's second contention is that the prosecutor's actual recommendation to the judge did not comply with the provision of the plea agreement requiring the government to recommend a sentence at the low-end of the sentencing range. The plea agreement states that "the Government will recommend that Mr. Johnson be sentenced at the low end of the applicable sentencing guideline range." The prosecutor's recommendation to the judge was as follows: "I am bound under the plea agreement not to recommend more than the low end of the sentencing range, and I will abide by that plea agreement."

■ When the government agrees to make a certain recommendation to the sentencing court, it is bound by the agreement to make that particular recommendation. *United States v. Myers,* 32 F.3d 411, 413 (9th Cir.1994). However, unless specifically required in the agreement, the government need not make the agreed-upon recommendation enthusiastically. *United States v. Benchimol,* 471 U.S. 453, 455, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985). Here, the prosecutor made the agreed-upon recommendation, albeit unenthusiastically, because by negative implication he told the court that he recommends a low-end sentence. He did not fail to make any recommendation, as was the error in *Myers,* 32 F.3d at 413, nor did he contradict his recommendation with statements indicating a preference for a harsher sentence, as was the error in *United States v. Brown,* 500 F.2d 375, 377 (4th Cir.1974).

However, Johnson's third claim of breach succeeds where the other two failed. At the sentencing hearing, the prosecutor introduced the victim impact statement of Julie McDonald, the victim of Johnson's 1994 domestic violence crime. Johnson objected to the relevance of the testimony, but the court allowed it, claiming that it might be relevant to the enhancements or to any departure. McDonald then read her statement condemning Johnson. Her statement included the following: "[T]here is a monster that lives inside of a man named Mark Wesley Johnson. He's mean, ugly, scary, controlling, manipulating."

We see no way to view the introduction of McDonald's statement other than as an attempt by the prosecutor to influence the court to give a higher sentence than the prosecutor's recommendation. The statement had nothing to do with the crime to which Johnson pleaded guilty: Johnson pleaded guilty to the crime of possessing a weapon by a prohibited person, and McDonald, although part of the crime that made Johnson a prohibited person, was not a part of the possession offense. Under U.S.S.G. § 1B1.3, there is no possible way her statement could be considered relevant to any enhancement. Being bound to sentence Johnson between 57 and 71 months, the district court's only possible use for McDonald's damning statement was as a reason to sentence Johnson at the high end of the sentencing range.[5] By introducing McDonald's statement solely for the purpose of influencing the district court to sentence Johnson more harshly, the prosecutor breached the government's agreement to recommend the low end of the sentencing range.[6]

■ Although the district court stated at the sentencing hearing that it was prepared to sentence Johnson to the high end of the sentencing range even before the actual sentencing hearing took place, "[t]he harmless error rule does not apply to the law of contractual plea agreements." *Myers,* 32 F.3d at 413. Therefore, we

---

5. 18 U.S.C. § 3661 allows the district court to consider any information relating to the defendant's "background, character, and conduct ... for the purpose of imposing an appropriate sentence."

6. Of course, if there had been no plea agreement, the statement would not have been improper.

vacate Johnson's sentence because of the government's failure to abide by the plea agreement. Because of the government's breach, we are required to remand for re-sentencing before a different judge. *See Santobello v. New York,* 404 U.S. 257, 263, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Camper,* 66 F.3d 229, 233 (9th Cir.1995).[7]

### III. CONCLUSION

The district court's two-level enhancement for restraint of victim is affirmed. However, because the enhancement for use of the weapon in conjunction with another felony offense was not supported by the facts and because the prosecutor breached the plea agreement, Johnson's sentence is vacated and remanded for re-sentencing before a different district court judge in accordance with this opinion.

AFFIRMED in part, VACATED and REMANDED in part.

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I concur in all of the majority opinion, except Part II.B. Because I cannot agree, however, that Johnson's conduct amounted to "physical restraint" under U.S.S.G. § 3A1.3, or that he has conceded the point,[1] I respectfully dissent from Part II.B.

The restraining conduct here consisted of Johnson grabbing the keys to Kelly Johnson's car as she sat in her car in the couple's driveway. Kelly "escaped" this restraint by jumping out of her car. The Guidelines define "physically restrained" to mean "the forcible restraint of the vic-

tim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 Application Note *1(i).*

I submit that taking the keys to a car is not "physical restraint," as that term is defined in the Guidelines. Kelly jumped out of the car and fled immediately after Johnson grabbed the keys. Given the Guidelines' definition, which requires a "forcible restraint of the victim such as by being tied, bound, or locked up," some use of force resulting in the physical or bodily restraint of the person is required to qualify for the enhancement. No use of force (or even the threat of force) was present here. The cases which have upheld application of this enhancement confirm that some use of force and resulting physical, bodily restraint is required. *See, e.g., United States v. Roberts,* 898 F.2d 1465, 1470 (10th Cir.1990) ( victim held around neck at knife point); *United States v. Stokley,* 881 F.2d 114, 116 (4th Cir.1989) (victim physically prevented from leaving room in which defendant had placed a pipe bomb).

For the foregoing reasons, I would hold that application of the § 3A1.3 victim restraint enhancement was error.

---

7. We remand to a different judge for re-sentencing because the case law requires us to do so. We intend no criticism of the district judge by this action, and none should be inferred.

1. The majority holds that Johnson has conceded that a "physical restraint" was involved. *See* Maj. op. at 1133 ("Johnson admitted in his reply brief that he restrained Kelly on March 20 when he held her in her car when she returned home from work."). Because of this assumption, the majority does

not reach the question of whether Johnson's conduct amounted to "physically restraining" Kelly, within the meaning of U.S.S.G. §§ 1B1.1 and 3A1.3. I read appellant's arguments differently and do not agree that Johnson has admitted that his conduct amounted to a "physical restraint," within the meaning of the Guidelines. *See, e.g.,* Appellant's Op. Br. at 31 ("Immediately afterward, she jumped out of the car and ran away; thus, she [Kelly] was not restrained."). I thus reach the issue of whether a "physical restraint" was involved.