**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rolland Terry COLEMAN,
Defendant–Appellant.**

No. 99–30104.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2000

Filed April 3, 2000

788

William S. LaBahn, Law Offices of William S. LaBahn, Eugene, Oregon, for the defendant-appellant.

Johnathan S. Haub, Assistant United States Attorney, Portland, Oregon, for the plaintiff-appellee.

Before: GOODWIN, GRABER, and FISHER, Circuit Judges.

GRABER, Circuit Judge:

After a bench trial, defendant Rolland Coleman was convicted of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2. Defendant appeals his conviction on three grounds: (1) the district court erred in denying his motion to suppress certain evidence; (2) the government breached the jury waiver agreement; and (3) there was insufficient evidence to support his conviction for armed bank robbery. We are not persuaded by Defendant's first two arguments but conclude that his third is well taken. Accordingly, we reverse Defendant's conviction for armed bank robbery, vacate his sentence, and return the case to the district court for entry of a judgment of conviction for unarmed bank robbery and for appropriate resentencing.

## BACKGROUND

On August 19, 1998, three black men robbed the Pacific Northwest Ironworkers Federal Credit Union located in Portland, Oregon. Witnesses gave the police a general description of the robbers and a partial license plate number of the car in which the robbers had made their getaway.

One of the bundles of money that the robbers had taken contained an electronic tracking device, or "tag." Later that same day, police officers used electronic equipment to track the tag to a local motel. The tracking equipment led the police to believe that the tag was in the immediate vicinity of a telephone booth in which co-defendant Ernest Johnson was standing. Police arrested Johnson and found a bag in the telephone booth. The bag contained, among other things, money from the bank robbery.

After officers arrested Johnson, they searched the area surrounding the motel. During the search, officers found a car matching the witnesses' description of the one used in the bank robbery and clothing in a trash dumpster matching the witnesses' description of the clothing worn by the bank robbers.

While the officers were arresting Johnson, they noticed Defendant, a black man, moving between his room and the rear of the motel. During the foregoing investigation, Federal Bureau of Investigation (FBI) agents summoned Defendant from his motel room. One of the agents advised Defendant of his Miranda rights and asked Defendant if he would accompany them to the scene of the robbery. At that time, Defendant denied that he had any involvement in the robbery, but he agreed to go with the officers to the credit union. At the credit union, witnesses to the robbery did not positively identify Defendant as one of the robbers. FBI agents then took Defendant to the police station.

At the police station, before interrogating Defendant, FBI agents again advised

him of his Miranda rights. After signing an advice-of-rights form, Defendant described the events of his day leading up to his arrest. He told the agents that Johnson and another co-defendant, Michael Ferguson, had awakened him at about 11 a.m. The three men then left Defendant's motel in Ferguson's car to buy heroin. At approximately 12:15 p.m., they bought heroin and used it while in the car. Agents then showed Defendant pictures of Ferguson and showed him mail with Ferguson's name on it that had been recovered from the car found at the motel. At that point, Defendant requested a lawyer. One of the FBI agents asked Defendant why he was choosing to invoke his right to counsel at that time. Defendant responded that he did not know anything about the bank robbery, was not a "snitch," and had his family to think about. The agents did not ask any further questions of Defendant, and Defendant did not say anything further to the agents. Defendant was released the following day when the State of Oregon declined to prosecute Defendant on state robbery charges.

Two days later, on August 22, FBI Special Agents Frazier and Howell went to Defendant's motel room. Frazier testified that they knocked on Defendant's door and asked if they could come in and talk with him regarding his contacts with Ferguson and Johnson on the day of the robbery. Frazier also testified that he did not advise Defendant of his Miranda rights before questioning him because, at that time, Defendant was neither a suspect nor in custody, and the agents had no intention of arresting him.

During the meeting on August 22, Defendant gave the agents a detailed statement regarding his contacts with Ferguson and Johnson on the day of the robbery, including a description of the clothing that Ferguson and Johnson were wearing. Defendant, however, again denied that he had any involvement in the robbery. During that interview, Defendant also told the agents that he had been a drug addict for most of his life and that he had been addicted to heroin for about the last 13 years. Defendant admitted that he had used heroin about an hour before the agents arrived to speak with him. Defendant said that he believed that he could kick his heroin habit by sleeping through the withdrawal.

Two days later, on August 24, Frazier returned to Defendant's apartment. Frazier brought with him several items of clothing that had been found in the trash dumpster at the motel. Frazier wanted to see whether Defendant could identify the clothing as that worn by Ferguson and Johnson on the day of the robbery. Frazier testified that, at that time, he still did not consider Defendant to be a suspect.

Frazier testified that he knocked on the door of Defendant's apartment, but that Defendant failed to answer. A window, located next to Defendant's front door, was covered only by some sheets. Frazier pulled the sheets aside and saw Defendant lying in bed, "kinda half asleep." Frazier asked Defendant if he could talk to him and show him the items of clothing that he had brought with him. Defendant let Frazier into the apartment and identified a shirt and hat as having been worn by Ferguson on the day of the robbery. Defendant could not identify any of the other items of clothing.

During their meeting on August 24, Defendant again told Frazier that he did not take part in the planning or execution of the robbery. Defendant also told Frazier that he had not used heroin in the past two days and was suffering heroin withdrawal. Frazier testified that Defendant appeared coherent, but more lethargic than he had been two days earlier.

The following day, August 25, Frazier and Howell returned to Defendant's motel. By that time, Ferguson had implicated Defendant in the robbery. Therefore, the agents now considered Defendant a suspect. Before going to the motel, Frazier had spoken with an Assistant United

States Attorney, who advised Frazier that the agents would not likely have "authorization to arrest" Defendant unless Defendant made incriminating admissions.

The agents knocked on Defendant's door and asked to speak with him regarding statements that Ferguson had made about the planning and execution of the credit union robbery. Defendant allowed the agents to enter his motel room. After the agents advised Defendant of his Miranda rights, they gave him a more detailed description of Ferguson's statements and told him that, based on those statements, they considered Defendant a suspect. Defendant then gave the agents several admissions and statements regarding his participation in the robbery.

The agents arrested Defendant for the federal credit union robbery and took him to jail. Immediately after arriving at the jail, Defendant began to experience convulsions and was taken to a hospital. Two days later, Defendant was released from the hospital and returned to the jail.

Defendant, Ferguson, and Johnson were charged with armed bank robbery. Defendant pleaded not guilty. Defendant later moved to suppress all statements that he had made to agents after he invoked his right to counsel on August 19. After a hearing, the district court denied that motion.

Ferguson, pursuant to a plea agreement, testified at Johnson's trial and implicated himself, Defendant, and Johnson in the planning and commission of the robbery. The jury convicted Johnson of armed bank robbery. Defendant waived trial by jury and agreed to a bench trial based in part on stipulated facts, including all the evidence adduced at Johnson's trial. The district court found Defendant guilty of armed bank robbery and sentenced him to 70 months' imprisonment.

## DISCUSSION

### 1. *Motion to Suppress*

■ Defendant first contends that, under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the district court erred by not suppressing certain inculpatory statements that he made after invoking his right to counsel on August 19. We review de novo whether a defendant was entitled to Miranda warnings. *See United States v. Montero–Camargo*, 177 F.3d 1113, 1121 (9th Cir.1999). We also review de novo the district court's determination that a defendant's statements were voluntary. *See United States v. Wolf*, 813 F.2d 970, 974 (9th Cir.1987).

As noted above, Defendant was arrested and interrogated on August 19. During that interrogation, Defendant invoked his right to counsel. The agents did not question him further on substantive matters. Defendant was not provided a lawyer, but was not questioned further and was released the following day.

■ The statements that Defendant sought to have suppressed were made *after* he was released from custody. Because Defendant had been released from custody for a significant period of time before investigators questioned him again, the district court's refusal to suppress those statements did not violate *Edwards*. *See United States v. Hines*, 963 F.2d 255, 257 (9th Cir.1992) ("[T]he *Edwards* rule does not apply to suspects who are not in continuous custody between the time they request counsel and the time they are reinterrogated.").

The FBI agents initiated contacts with Defendant days later, at his apartment. The different setting and the passage of time establish that Defendant was not in continuing custody. Moreover, nothing about the circumstances surrounding the agents' brief interviews of Defendant on August 22 or on August 24 suggests that Defendant was in custody at all at those times.

With regard to the agents' interview of Defendant on August 25, Defendant did not make any inculpatory statements until

after he had been advised of, and orally had waived, his Miranda rights. Again, the record shows that Defendant was not in custody at all between August 20, when he was released from jail, and August 25, so the "continuing custody" doctrine does not avail him.

■ Nor did Defendant's symptoms of heroin withdrawal render his statements involuntary. Although Defendant's heroin withdrawal caused lethargy and physical discomfort, such symptoms alone are insufficient to establish involuntariness. *See United States v. Martin,* 781 F.2d 671, 673–74 (9th Cir.1985) (holding that, although the effects of the defendant's medicine left him groggy and in pain, his statements were voluntary).

■ Finally, Defendant claims that his statements and admissions were involuntary, because the agents had promised him leniency in return for his cooperation. When determining whether a statement was made voluntarily, "[t]he test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Guerrero,* 847 F.2d 1363, 1366 (9th Cir.1988). Defendant testified that the agents told him, "[I]f I knew anything, now is the time to tell that. They can tell the prosecutor to give me little or no time." Such an inducement to cooperate is insufficient to establish involuntariness. *See id.* ("An interrogating agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect.").

We conclude that Defendant's Miranda rights were observed and that his statements were voluntary. The district court did not err in denying Defendant's motion to suppress.

## 2. *Breach of Jury Waiver Agreement*

As noted above, the government and Defendant entered into an agreement under which Defendant waived his right to a jury trial. Defendant claims that the government breached that agreement. To redress the government's breach, Defendant seeks to have the "sentencing court ... fashion an adequate remedy for the breach including allowing [D]efendant to withdraw his plea and permitting him to either re-plead or go to trial."

■ We review de novo alleged violations of plea agreements. *See United States v. Diamond,* 53 F.3d 249, 252 (9th Cir.1995). The agreement in this case, although bearing a different label, is sufficiently similar to a plea agreement that we believe it is appropriate to employ the same standard of review. "Plea bargains are 'contractual in nature and must be measured by contract law standards.'" *United States v. Packwood,* 848 F.2d 1009, 1011 (9th Cir.1988) (quoting *United States v. Sutton,* 794 F.2d 1415, 1423 (9th Cir. 1986)).

■ The agreement pursuant to which Defendant waived his right to be tried by a jury provides in part:

> At any sentencing hearing that may occur, the government will urge the Court to grant a 3–level reduction in the offense level category for acceptance of responsibility, and that the sentence be at the low end of the guideline range. Any disputed sentencing issues will be decided by this Court at the sentencing hearing. The government's recommendations are not binding on the Court, and the final decision as to what the sentence will be is made by this Court under the Sentencing Guidelines.

Defendant argues that the government breached that provision by failing to recommend that the district court sentence Defendant to the low end of the guideline range. The following colloquy took place at the sentencing hearing:

THE COURT: The government is making a recommendation of low end of the guideline. Is that correct, Counsel?

[Prosecutor]: Well, your Honor, I spoke with counsel about that. That was before the information that we received, from Mr. Ferguson, which I believe places the defendant in a different light.

I have spoken with counsel. Rather than make a low-end recommendation, I would ask permission of the court to *withdraw any sentence recommendation,* and leave it entirely up to the court, and not make a specific recommendation to the court at all.

THE COURT: Well, I feel that this whole thing was negotiated based upon a recommendation of low end, and I will impose the sentence *as recommended.*

(Emphasis added.)

In view of that colloquy, we conclude that there was no breach of the jury waiver agreement. The colloquy shows that the court understood that, under the terms of the agreement, the government was required to recommend a low-end sentence and that the government, however grudgingly, had in fact made such a recommendation. *See United States v. Johnson,* 187 F.3d 1129, 1135 (9th Cir.1999) ("[U]nless specifically required in the agreement, the government need not make the agreed-upon recommendation enthusiastically."). The colloquy also makes clear that, when the government attempted to withdraw its recommendation, the court did not allow it to do so. The court then sentenced Defendant according to the terms of the jury waiver agreement, that is, at the lowest end of the applicable Guidelines range with a three-level reduction for acceptance of responsibility.

This case is distinguishable from *United States v. Myers,* 32 F.3d 411 (9th Cir.1994)

(per curiam), and *Johnson,* 187 F.3d 1129, in two significant respects. In each of those cases, the government promised in a plea agreement to recommend a low-end sentence. In each case, however, the government failed to make even a grudging recommendation of a low-end sentence before sentencing occurred. In *Myers,* the government failed to make such a recommendation until *after* the court had sentenced the defendant to the *high end* of the Guidelines range. *See* 32 F.3d at 413. Similarly, in *Johnson,* the government undermined its own promise by introducing a victim's statement "solely for the purpose of influencing the district court to sentence [the defendant] more harshly." *See* 187 F.3d at 1135. Here, by contrast, the government grudgingly made a low-end recommendation before sentencing occurred and was not allowed to withdraw it.

Moreover, here, unlike in *Myers* and *Johnson,* the district court followed the low-end recommendation required by the agreement and sentenced Defendant to the lowest possible term under the Guidelines. Defendant has received every benefit of the jury waiver agreement and, therefore, has no viable contract claim. *See Coca–Cola Bottling Co. v. Coca–Cola Co.,* 988 F.2d 386, 409 (3d Cir.1993) ("It is an assumption of contract law that the principal purpose of the rules relating to breach is to place the injured party in as good a position as he would have been had the contract been performed.") (internal quotation marks omitted).

### 3. *Sufficiency of the Evidence*

■ Finally, Defendant claims that there was insufficient evidence to support his conviction for *armed* bank robbery under 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 2.[1] Sufficient evidence exists to

1. 18 U.S.C. § 2113(a) provides:
   Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing

   of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or
   Whoever enters or attempts to enter any bank, credit union, or any savings and loan

support a conviction when, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

As a general matter, a co-conspirator who aids and abets an armed bank robbery can be convicted as a principal. *See United States v. Short*, 493 F.2d 1170, 1172 (9th Cir.), *modified*, 500 F.2d 676 (9th Cir.1974). "Armed bank robbery under 18 U.S.C. § 2113(d) is an aggravated form of unarmed bank robbery, under § 2113(a)." *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir.1994). Therefore, to be convicted of armed bank robbery, a defendant. must have violated § 2113(a) and also engaged in the aggravating behavior provided in § 2113(d). Accordingly, to convict Defendant of armed bank robbery "the government must first show that [D]efendant knowingly and intentionally aided and abetted the underlying offense of unarmed bank robbery and then show that [D]efendant knowingly and intentionally aided the commission of the aggravating element: assaulting a person or putting a life in jeopardy before or during the commission of that aggravating element." *Dinkane*, 17 F.3d at 1197. Put another way:

> In order to convict a defendant for armed bank robbery under an aiding and abetting theory, this circuit requires the government to show beyond a reasonable doubt both that the defendant knew that the principal had and intended to use a dangerous weapon during the robbery, and that the defendant intended to aid in that endeavor.

*Id.* at 1195; *see also United States v. Jones*, 592 F.2d 1038, 1042 (9th Cir.1979) (holding that knowledge that the principal has and intends to use a gun is an essential element of the offense of aiding and abetting armed bank robbery).

Here, the record shows that Defendant (1) discussed several aspects of a bank robbery with his two co-defendants, Ferguson and Johnson, before entering the credit union; (2) helped select the particular credit union to rob; (3) went inside the building that housed the credit union shortly before the robbery to "check it out"; (4) was in the building at some point while Ferguson and Johnson were committing the robbery; (5) moved the getaway car and fled with Ferguson and Johnson in that car after the robbery; and (6) attempted to help dispose of evidence after the commission of the crime, knowing full well that it was evidence of the credit union robbery. That evidence clearly is sufficient to support a conviction for *unarmed* bank robbery, which is a lesser-included offense of armed bank robbery. *See Dinkane*, 17 F.3d at 1198 (stating that unarmed bank robbery is a lesser-included offense of armed bank robbery).

The government, however, failed to establish that Defendant "knowingly and intentionally aided the commission of the aggravating element: assaulting a person or putting a life in jeopardy before or

---

association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny-
Shall be fined under this title or imprisoned not more than twenty years, or both.
18 U.S.C. § 2113(d) provides:
 Whoever, in committing, or in attempting to commit, any offense defined in subsec-

tions (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both.
18 U.S.C. § 2 provides:
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

during the commission of that aggravating element." *Id.* at 1197. Although circumstantial evidence "can be used to prove any fact," *id.* at 1196 (quoting *United States v. Stauffer,* 922 F.2d 508, 514 (9th Cir.1990)), the government presented insufficient evidence to prove that Defendant knew that either Ferguson or Johnson had, or intended to use, a gun or that either of them intended to use violence during the bank robbery.

At trial, *none* of the witnesses to the credit union robbery testified that Defendant was present when either Ferguson or Johnson used a gun or injured a victim. Even Ferguson, who testified for the government, did not state that Defendant knew that he and Johnson had, or intended to use, guns or violence during the robbery. Ferguson testified only that Defendant understood that his role was to "run around and grab up the money" while Ferguson and Johnson "got everybody's attention." The government, however, failed to elicit testimony from Ferguson regarding whether Defendant knew *how* Ferguson and Johnson were going to "g[e]t everybody's attention." Additionally, although Ferguson testified that he had been armed the entire day of the robbery, he did not testify that Defendant *knew* that he had been so armed. Indeed, there was testimony that Ferguson and Johnson kept guns away from Defendant. Accordingly, we hold that insufficient evidence was presented at Defendant's bench trial to support his conviction for *armed* bank robbery.

■ Because there was insufficient evidence supporting Defendant's conviction for armed bank robbery, his conviction for that offense must be reversed. On remand, the government may not retry Defendant for armed bank robbery. *See Jones,* 592 F.2d at 1042 (holding that the double jeopardy clause bars retrial under § 2113(d) when a defendant's armed robbery conviction is reversed for lack of sufficient evidence). However, because we have concluded that sufficient evidence supports Defendant's conviction for unarmed bank robbery, in accordance with Defendant's express request for relief, we vacate his sentence and remand to the district court for resentencing under 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. *See Jones,* 592 F.2d at 1042 (remanding for resentencing under § 2113(a) where there was insufficient evidence to support the defendant's conviction for armed bank robbery under § 2113(d)).[2]

## CONCLUSION

For the foregoing reasons, Defendant's conviction for armed bank robbery is REVERSED. Defendant's sentence is VACATED. The case is REMANDED with instructions to enter a conviction for unarmed bank robbery and to resentence Defendant accordingly.

---

2. Defendant also appeals his sentence. Because of our disposition of Defendant's evidentiary claim, we need not address Defendant's argument that the district court erred in calculating his sentence for armed bank robbery under the Sentencing Guidelines.